IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

TONY OWEN DUPREE,
    Petitioner,

vs.                                        Case No. 3:09cv304/RV/EMT

WALTER McNEIL,
    Respondent.
_____/

## REPORT AND RECOMMENDATION

    Now pending is Respondent's amended motion to dismiss (Doc. 22; *see also* Docs. 24–27 (exhibits in support thereof)) the petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 1). Respondent seeks dismissal of the petition on the basis that it was untimely filed pursuant to 28 U.S.C. § 2244(d). Petitioner responded in opposition to the motion (Doc. 29).

    This matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(b). After careful consideration, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter. It is further the opinion of the undersigned that the pleadings and attachments before the court show that the petition should be dismissed as untimely.

I.    BACKGROUND AND PROCEDURAL HISTORY

    The procedural background of this case is undisputed by the parties and established by the state court record (Docs. 24–27). Following a jury trial on June 25, 1990, in the Circuit Court in and for Santa Rosa County, Florida, Petitioner was found guilty of first degree murder and sentenced to life imprisonment (*see* Doc. 24-1 at 5, docket entry dated 06/25/1990).[1] Petitioner appealed his conviction and sentence to the Florida First District Court of Appeal ("First DCA"). On January 11, 1993, the First DCA issued a written opinion reversing the conviction and remanding the case for a new trial (Doc. 24-1 at 17–42). Dupree v. State, 615 So. 2d 713 (Fla. 1st DCA 1993).

---

[1] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

On February 22–24, 1994, Petitioner was retried by a jury and found guilty of the lesser included offense of second degree murder (Doc. 24-6 at 3–64; Doc. 24-7 at 1–49; Doc. 25-1 at 1–51; Doc. 25-2 at 1–51). He was adjudicated guilty and sentenced on March 31, 1994, as a habitual violent felony offender, to life imprisonment without the possibility of parole for fifteen (15) years, with pre-sentence credit of 543 days (Doc. 24-4 at 38–42; Doc. 25-3 at 4–40). Petitioner appealed his conviction and sentence to the First DCA. On May 30, 1995, the First DCA affirmed the judgment per curiam without written opinion (Doc. 25-4 at 22). Dupree v. State, 656 So. 2d 155 (Fla. 1st DCA 1995) (Table). The mandate issued June 15, 1995 (*id.* at 25).

On April 21, 1997, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Doc. 25-5 at 29–67). The trial court summarily denied some of the claims and denied the remaining claims after a limited evidentiary hearing (Doc. 25-6 at 11–13; Doc. 26-2 at 61–68). Petitioner appealed the decision to the First DCA. On June 25, 2002, the First DCA affirmed the decision per curiam without written opinion, with the mandate issuing November 6, 2002 (Doc. 26-5 at 23, 29). Dupree v. State, 831 So. 2d 179 (Fla. 1st DCA 2002) (Table).

On August 16, 2004 Petitioner filed a motion for clarification of sentence (Doc. 27-4 at 11–12). In an order rendered December 8, 2004, the court granted the motion and directed the clerk of court to amend the judgment and sentence to reflect that Petitioner's sentence was to run concurrently with his sentence in another case (Doc. 27-6 at 2–3). A corrected judgment was entered by the clerk on December 13, 2004 (*see* Doc. 24-1 at 11; Doc. 27-6 at 16). Petitioner did not appeal the judgment to the First DCA.

On August 10, 2005, Petitioner filed a motion to correct illegal sentence, pursuant to Rule 3.800(a) of the Florida Rules of Criminal Procedure (Doc. 26-6 at 11–61). The trial court denied the motion on June 13, 2006 (Doc. 26-7 at 1–8). Petitioner appealed the decision to the First DCA. On February 27, 2007, the First DCA affirmed the decision per curiam without written opinion, with the mandate issuing April 26, 2007 (Doc. 27-1 at 20, 25). Dupree v. State, 953 So. 2d 521 (Fla. 1st DCA 2007) (Table).

On February 14, 2007, Petitioner filed a second motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Doc. 27-2 at 13–25). The trial court summarily denied the motion on October 24, 2007 (Doc. 27-2 at 63–68). Petitioner appealed the decision to the First DCA. On June 17, 2008, the First DCA affirmed the decision per curiam without written opinion (Doc. 27-3 at 101). Dupree v. State, 987 So. 2d 82 (Fla. 1st DCA 2008) (Table). The mandate issued August 19, 2008 (Doc. 27-4 at 9).

Petitioner filed the instant habeas action on July 16, 2009 (Doc. 1 at 29). On May 10, 2010, Respondent filed an amended motion to dismiss the petition as untimely (Doc. 22). Petitioner filed his response in opposition to the motion on May 17, 2010 (Doc. 29).

II     ANALYSIS

Pursuant to the requirements set forth in 28 U.S.C. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L.No. 104-132, 110 Stat. 1214, which became effective on April 24, 1996, a one-year period of limitation applies to the filing of a habeas petition by a person in custody pursuant to a state court judgment. The limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Section 2244(d)(1).

Respondent contends that the appropriate statutory trigger for the federal limitations period is § 2244(d)(1)(A), the date on which the judgment of conviction became final by the conclusion of direct appeal (*see* Doc. 22 at 6–10). Respondent makes three alternative arguments as to the date Petitioner's conviction became final (Doc. 22 at 6–9). Under the scenario most favorable to Petitioner (Respondent's Argument 3), the judgment which triggered the federal limitations period was the corrected judgment entered after the trial court granted Petitioner's motion for clarification. *See* Ferreira v. Sec'y, Dep't of Corr., 494 F.3d 1286, 1293 (11th Cir. 2007) (addressing issue of what constitutes "judgment" for purposes of AEDPA's statute of limitations when petitioner is resentenced in state court and raised federal habeas claims relating only to original conviction, and holding that judgment on resentencing was judgment which triggered federal limitations period because judgment is based on both conviction <u>and</u> sentence); *see also, e.g.,* Stites v. Sec'y for Dep't of Corr., 278 Fed. Appx. 933, 935 (11th Cir. 2008) (addressing issue of which judgment petitioner was "in custody" pursuant to, where original judgment was affirmed but amended judgment was subsequently entered which reduced sentence, and, following logic of Ferreira, holding that petitioner was "in custody" pursuant to resentencing judgment; thus date of resentencing judgment

controlled start of AEDPA's statute of limitations).[2]  Respondent argues the corrected judgment became final thirty (30) days after rendition of the order correcting the judgment, when Petitioner's time for seeking an appeal expired (Doc. 22 at 9).  *See* Fla. R. App. P. 9.140(3) (an appeal by a defendant in a criminal case is commenced by filing a notice of appeal "at any time between the rendition of a final judgment and 30 days following rendition of a written order imposing sentence.").

The undersigned agrees with this position.  Under the reasoning of Ferreira, the corrected judgment was the judgment which triggered the federal limitations period.  The corrected judgment became final on January 10, 2005.[3]  *See* Bridges v. Johnson, 284 F.3d 1201, 1202 (11th Cir. 2002) (holding that where petitioner did not seek direct review of his judgment of conviction or sentence, his judgment of conviction (entered upon his guilty plea) became "final" for purposes of § 2244 on the date his 30-day right to appeal expired); Walk v. State, 707 So. 2d 933 (Fla. 5th DCA 1998) (holding that if "a conviction and sentence are not appealed, they become final 30 days after they are entered."); Gust v. State, 535 So. 2d 642 (Fla. 1st DCA 1988) (holding that if defendant does not appeal the conviction or sentence, judgment becomes final when the 30-day period for filing direct appeal expires).  therefore, Petitioner had one year from that date, or until January 10, 2006, to file his § 2254 petition.  *See* Downs v. McNeil, 520 F.3d 1311, 1318 (11th Cir. 2008) (limitations period should be calculated according to "anniversary method," under which limitations period expires on anniversary of date it began to run) (citing Ferreira, 494 F.3d at 1289 n. 1).[4]

---

[2] The undersigned cites Stites only as persuasive authority and recognizes that the opinion is not considered binding precedent.  *See* 11th Cir. R. 36-2.

[3] According to the Florida rules governing appeal proceedings in criminal cases, Petitioner had thirty (30) days following rendition of the order imposing sentence to file a notice of appeal.  In the instant case, the written order imposing the corrected sentence in Petitioner's case was rendered on December 8, 2004 (*see* Doc. 24-1 at 11; Doc. 27-6 at 2–4).  *See* Fla. R. App. P. 9.020(h) (order is rendered when signed, written order is filed with clerk of lower tribunal). The day the order was rendered is excluded from the 30-day calculation; therefore, the period for seeking an appeal began to run on December 9, 2004.  *See* Fla. R. App. P. 9.420(f).  Thirty (30) days from that date was January 8, 2005; however, because that day was a Saturday, the 30-day appeal period did not expire until the following Monday, January 10, 2005.  *See id.*

[4] Petitioner does not assert that a different statutory trigger applies.  However, liberally construing his pleadings, which allege newly discovered evidence, he appears to suggest that § 2244(d)(1)(D) is the appropriate statutory trigger (*see* Doc. 1 at 4–5, 7–19).  Upon review of Petitioner's claims and the state court record, however, the undersigned concludes that Petitioner could have discovered, with due diligence, the factual predicate of each of his claims prior to January 10, 2005, the date his corrected judgment of conviction and sentence became final.

In Ground One, Petitioner asserts that the sentencing judge imposed a vindictive sentence upon Petitioner's retrial by imposing a harsher sentence than his original sentence (*see* Doc. 1 at 4, 7–10).  Petitioner contends his second sentence was harsher because it was effectively a life sentence without any possibility of parole because parole was abolished for non-capital felonies in 1983; whereas, his first sentence was a parole-eligible sentence (*id.*).  The sentence at issue was imposed on March 31, 1994.  Petitioner asserts he did not discover that his sentence was parole-ineligible until February 22, 2005, the date he received a response to his inquiry with the Florida Parole Commission as to when he would receive a parole interview, and the Parole Commission stated he was not eligible for parole (*see* Doc 1 at 34).

Case No.: 3:09cv304/RV/EMT

Petitioner may be entitled to review of his petition if the limitations period was tolled pursuant to statutory tolling principles. Section 2244(d)(2) provides:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2). In the instant case, Petitioner filed a Rule 3.800(a) motion on August 10, 2005, after 211 days of the federal limitations period ran (Doc. 26-6 at 11–61). Respondent concedes this was a tolling post-conviction application (*see* Doc. 22 at 9). The motion was pending until April 26, 2007, upon issuance of the appellate court's mandate affirming the trial court's denial of the motion. *See* Nyland v. Moore, 216 F.3d 1264, 1267 (11th Cir. 2000) (where Florida petitioner appeals trial court's denial of post-conviction application, application remains pending until issuance of the mandate by the appellate court).

Petitioner's next state court filing was his second Rule 3.850 motion. Respondent contends this motion was not "properly filed" because it was untimely and thus did not qualify as a tolling motion (Doc. 22 at 10). As § 2244(d)(2) provides, an application for state post-conviction or other collateral review tolls the federal period of limitation only if it was "properly filed." 28 U.S.C. § 2244(d)(2). In Pace v. DiGuglielmo, the Supreme Court held that a state post-conviction petition

---

However, Petitioner (or his counsel on direct appeal) could have discovered, through legal research or upon inquiry with the Parole Commission, that his sentence was not parole-eligible within days or weeks of imposition of the sentence. Therefore, the factual predicate of Ground One could have been discovered prior to January 10, 2005, the date Petitioner's conviction became final (indeed, the February 22, 2005, letter from the Parole Commissio10references a prior notification to Petitioner, on October 9, 2002, that he was parole-ineligible (Doc. 1 at 34)).

In Ground Two, Petitioner asserts the prosecutor knowingly presented false testimony of Investigator Jim Spencer (*see* Doc. 1 at 4, 11–12). He states Investigator Spencer testified that he was unable to locate or prove the existence of Mr. Bud "Peoples" (Petitioner also refers to this person as Mr. Bud "Peebles" (*see* Doc. 29 at 10, 14, 17)) an alibi witness, but a memorandum from Jim Martin, an investigator for the Public Defender's Office, to Petitioner's file in the Public Defender's Office, dated June 7, 1989, described Mr. Martin's locating Mr. "Peoples" and interviewing him (*see* Doc. 27-2 at 26)). Investigator Martin's memorandum proves that the falsity of Investigator Spencer's testimony was known by the defense at the time Spencer testified, well before Petitioner's conviction became final in 2005.

Petitioner additionally asserts in Ground Two that the State destroyed all evidence in his case, pursuant to an order of the trial court issued August 8, 1995 (Doc. 1 at 4, 12–15). Petitioner contends this prevented him from proving his innocence after trial (*id.*). Assuming arguendo that such an order actually issued (the state court record does not show that an order of this nature issued, and Petitioner has not submitted a copy of the alleged order with his petition; further, the state post-conviction court found that such an order did not exist), Petitioner could have discovered, through the exercise of due diligence, the fact that such an order issued by simply reviewing (either himself or through a person on his behalf) the court file in his criminal case prior to 2005 (in fact, Petitioner states he discovered the existence of the alleged order because his mother searched the court files (*see* Doc. 1 at 11)).

In Ground Three, Petitioner asserts he received ineffective assistance of counsel in his first and second trials based upon counsel's failure to seek independent experts, impeach State witnesses, and investigate and present testimony from defense witnesses (Doc. 1 at 15–19). Petitioner was aware of the factual predicate of this claim on or before February 24, 1994, the date his second trial concluded, which was well before his conviction became final in 2005 (indeed, Petitioner presented the factual predicate of this claim in his Rule 3.850 motion, filed on April 21, 1997 (Doc. 25-5 at 29–67)).

rejected by the state court as untimely under state law is not "properly filed" within the meaning of § 2244(d)(2). 544 U.S. 408, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005). The Court explained:

> In <u>Artuz v. Bennett</u> [531 U.S. 4, 121 S. Ct. 361, 148 L. Ed. 2d 213 (2000) ], we held that time limits on postconviction petitions are "condition[s] to filing," such that an untimely petition would not be deemed "properly filed." However, we reserved the question we face here: "whether the existence of certain exceptions to a timely filing requirement can prevent a late application from being considered improperly filed." Having now considered the question, we see no grounds for treating the two differently.
>
> As in <u>Artuz</u>, we are guided by the "common usage" and "commo[n] underst[anding]" of the phrase "properly filed." In common understanding, a petition filed after a time limit, and which does not fit within any exceptions to that limit, is no more "properly filed" than a petition filed after a time limit that permits no exception. The purpose of AEDPA's statute of limitations confirms this commonsense reading. On petitioner's theory, a state prisoner could toll the statute of limitations at will simply by filing untimely state postconviction petitions. This would turn § 2244(d)(2) into a de facto extension mechanism, quite contrary to the purpose of AEDPA, and open the door to abusive delay.

*Id.* at 413 (alterations in original) (citations omitted). The Court simply stated, "[w]hen a postconviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2)," because "time limits, *no matter their form*, are 'filing' conditions." *Id.* at 414, 417, (internal quotation marks and alterations omitted) (emphasis added). The Supreme Court held that "[b]ecause the state court rejected petitioner's [post-conviction] petition as untimely, it was not 'properly filed' and he is not entitled to statutory tolling under § 2244(d)(2)." *Id.* at 417.

Furthermore, in <u>Sweet v. Sec'y, Dep't of Corrs.</u>, the Eleventh Circuit affirmed the dismissal of a § 2254 petition as time-barred, holding that an untimely state post-conviction motion is not "properly filed," and does not toll the one-year federal limitation period even if the state court denied the motion on alternative grounds. 467 F.3d 1311, 1318 (11th Cir. 2006). In that case, the state trial court dismissed Sweet's motion as "untimely and facially insufficient," and, alternatively, as without merit. *Id.* at 1313–14. The district court dismissed Sweet's § 2254 petition as untimely, finding that his Rule 3.850 motion did not toll the federal limitations period. *Id.* at 1314. On appeal, citing <u>Artuz</u> and <u>Pace</u>, the Eleventh Circuit held that the state court's alternative finding that Sweet's claim was without merit did not render the Rule 3.850 motion "properly filed" because, "when a state court unambiguously rules that a post-conviction petition is untimely under state law, we must respect that ruling and conclude that the petition was not 'properly filed' for the purposes of § 2244(d)(2), regardless of whether the state court also reached the merits of one of the claims." *Id.* at 1318. Although the Eleventh Circuit held that an untimely state post-conviction motion is not "properly filed," and does not toll the one-year federal limitation period even where the state court denied the motion on alternative grounds, this holding has been applied only in cases where the state

court made an "unambiguous finding" that the petitioner's state post-conviction motion was untimely. *Id.* at 1318.

In the instant case, in the order denying Petitioner's second Rule 3.850 motion, the state trial court expressly referenced the two-year time limit for bringing a timely claim under Rule 3.850, as well as the newly discovered evidence exception to the two-year limit (*see* Doc. 27-2 at 64–65). The court unambiguously found that each of Petitioner's claims asserted in his second Rule 3.850 motion was untimely (*id.* at 65–68). In accordance with Pace and Sweet, the undersigned concludes that Petitioner's untimely second Rule 3.850 motion was not "properly filed," and it, therefore, did not toll the one-year period for filing his § 2254 petition.

Petitioner filed no other applications for state post-conviction or other collateral review; therefore, the federal limitations period expired on September 28, 2007 (after 154 more days of the federal limitations period expired), and his federal petition filed on July 16, 2009, was untimely by nearly two years. Accordingly, the instant petition should be dismissed as untimely pursuant to 28 U.S.C. § 2244(d).

Petitioner does not allege that any other tolling principles apply. Furthermore, he has not shown that he is entitled to federal review of his claims through the "fundamental miscarriage of justice" gateway to the procedural bar. To satisfy the miscarriage of justice exception to a procedural bar, "the habeas petitioner must show that a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995) (internal quotation and citation omitted). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* To be credible, "such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.*, 513 U.S. at 324.

In the instant case, Petitioner presents a narrative of his interaction with the victim the day before she was killed, including that he last saw the victim with her allegedly abusive husband, Roy Lawrence (Doc. 29 at 16–17). He also describes how the investigation by law enforcement (which Petitioner alleges was based upon unreliable sources) led to him, as well as how officers extracted (through coercive techniques, according to Petitioner) a statement from him which was presented at trial as a confession (Doc. 29 at 17–22). Petitioner also points out weaknesses in the State's circumstantial evidence case and argues that he would have been acquitted if defense counsel had obtained independent experts to examine certain physical evidence (including tire tracks, cigarette butts, and beer cans), deposed Roy Lawrence and his alibi witness, sought admission of certain

inadmissible evidence (hearsay statements by the victim and Roy Lawrence's nephew, and statements of the victim's neighbors regarding acts of violence by the victim and Roy Lawrence), and presented testimony from Mr. Bud Peebles, an alibi witness who would have placed Petitioner away from the crime scene at the time of the murder (*id.* at 9–11, 14–16, 23).

However, the evidence submitted by Petitioner in support of his actual innocence claim bears no indicia of reliability. He submitted a letter from Liz Livingston, whom Petitioner describes as a cousin of Roy Lawrence, stating her belief that Mr. Lawrence killed the victim and was involved in several other murders of family members (*id.* at 22, Ex. F). However, Ms. Livingston's statements do not suggest she witnessed the murder of which Petitioner was convicted or any events directly related to it. Additionally, Petitioner submitted a typed statement purportedly of Robert W. Peebles, Jr., the son of Bud Peebles, describing his father's statements to law enforcement officers in 1988 (Doc. 29, Ex. H). However, the statement is not signed or otherwise verified by Robert Peebles (*id.*).[5] Furthermore, the statement does not suggest that Robert Peebles had any firsthand knowledge of the events surrounding the murder; it simply states he was present when his father, Bud Peebles, told law enforcement officers that he helped a man with his broken-down red truck on the evening of December 18, 2009 (presumably, the reference to 2009 is a typographical error) and pulled the truck to the man's home the next morning (*id.*). This evidence falls far short of the showing required by Schlup.

In light of Petitioner's failure to submit exculpatory scientific evidence, trustworthy eyewitness accounts, critical physical evidence, or other new reliable evidence establishing a colorable claim of actual innocence, Petitioner has failed to show he is entitled to review of his claims through the "fundamental miscarriage of justice" exception to the time bar. Accordingly, his habeas petition should be dismissed as untimely.

III. CONCLUSION

Based upon the above discussion, the undersigned concludes that Petitioner filed the instant § 2254 petition beyond the one-year statutory limitations period. Furthermore, he has failed to demonstrate that any tolling provisions render his petition timely, or that he is entitled to review under any exception to the time bar. Therefore, Respondent's motion to dismiss should be granted, and the § 2254 petition should be dismissed.

IV. CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant,"

---

[5] The statement was apparently taken by Petitioner's mother, Millie (or Mille) Presely (*see* Doc. 29 at 14, Ex. H).

Case No.: 3:09cv304/RV/EMT

and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1. That Respondent's motion to dismiss (Doc. 22) be **GRANTED**.
2. That the petition for writ of habeas corpus (Doc. 1) be **DISMISSED** with prejudice as untimely.
3. That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 20<u>th</u> day of October 2010.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**